U.S. District Court
Middle District of Florida
Ocala Division

**GOVERNMENT EXHIBIT**

Exhibit No.: __1__

Case No.: 5:26-mj-1026-PRL

UNITED STATES OF AMERICA

vs.

ERIC DEVON LAZENBY

Date Identified: 2-5-26
Date Admitted: 2-5-26

## AFFIDAVIT  12-1250F

STATE OF FLORIDA

-VS-

Eric Devon Lazenby

IN THE CIRCUIT COURT
CHARLOTTE COUNTY
STATE OF FLORIDA

Before me, **George C. Richards**, a county/circuit judge in and for said county personally appeared **Detective Rebecca Lissow**, who being first duly sworn, deposes and says that on the **2** day of **July**, **2012** A.D., in the county aforesaid, one **Eric Devon Lazenby**, being further described as White Male, with a date of birth of **5/6/1990**, having **Brown** hair and **Brown** eyes, standing **604** in height, weight approximately **160** pounds, with a last known address of **3601 Rockledge Drive, Columbus, Franklin** County, Ohio, did commit the offense of **Kidnapping and False Imprisonment**, in violation of the Florida State Statute **787.01(2) and 787.02(2)**.

There is evidence to support this in that:

On July 2, 2012, Victim M▇▇ P▇▇ was at Christopher Carroll's residence, located at 7363 Mullen Lane, Port Charlotte, Charlotte County, Florida, where he had been staying for a few nights. At approximately 11:30am, Kelly Bodell entered the home and entered into the bedroom where P▇▇ had been staying. Bodell started yelling at P▇▇ put a gun in his face and hit him several times in the face and head with his bare hands. Bodell said P▇▇ needed to give him the $200 which P▇▇ owed to him from to a previous 'robbery' which occurred several weeks prior to this incident, over prescription medications.

P▇▇ stated while Bodell was conversing about the money, two other subjects arrived at the home. One suspect was known to P▇▇ as Eric Lazenby, the other subject was known as Austin. P▇▇ said he wanted to leave the residence but he was told that he was not going anywhere until P▇▇ gave Bodell his money. P▇▇ stated when he wanted a drink of water, Carroll would give him a drink; if he wanted to use the restroom, Bodell would stand outside of the bathroom door to assure that Plutt did not leave the residence.

Bodell left the residence for approximately 15 minutes sometime during the course of P▇▇ being held in the residence. While Bodell was gone, Bodell directed Austin, Lazenby and Carroll that they were in charge of making sure that P▇▇ did not leave the residence. No one offered P▇▇ assistance, nor did anyone contact law enforcement for assistance.

P▇▇ stated that the handgun, described as a black handgun with a brown grip, was not physically out all of the time; however, it was always in Bodell's possession (waistband). P▇▇ stated that Bodell made it clear that if he didn't get the money, somehow, someway, that it would not be good and that the victim was going

INV-RP.16.032309                PAGE 1 OF 3

to have broken legs. Bodell said if he lost his temper it was not going to be a good day for P▮▮ P▮▮ stated that he was in fear for his life and was terrified that he would be severely injured due to Bodell's experience as a Mixed Martial Arts fighter.

While at the home and several hours passing (approximately five hours), P▮▮ became fearful that he was not going to get away from the suspects. P▮▮ started making false and real phone calls to his family members, some of which live out of state. P▮▮ explained that he was becoming more desperate and was thinking of ways to get out of the residence and into a public place so that he could take a chance at running away without getting shot.

At approximately 5:45pm, P▮▮ told Bodell, Lazenby, Austin and Carroll that he had made arrangements with his grandparents to get the money; they (grandparents) were in the process of sending the money to Wal-Mart, via Money Gram. The suspects agreed to take P▮▮ to Wal-Mart to obtain the money.

Lazenby, Bodell, Austin and P▮▮ got into an older model SUV and went to Englewood Wal-Mart. As they walked toward the store, P▮▮ attempted to put space between himself and the suspects; however the suspects moved in closer to him, not affording him the opportunity to run. Once inside Wal-Mart, P▮▮ spends several minutes in the Guest Service Department pacing back and forth with Bodell in view and closely watching P▮▮. After several minutes passed, P▮▮ attempted to get the money from the employee using a fictitious transaction number; however, P▮▮ knew the money was not really coming. P▮▮ stated he acted as if the money was being sent to stall, so he could get up the nerve to run.

I met with Wal-Mart Loss Prevention employees whom provided me with a surveillance video. At 5:52pm, the video shows P▮▮, Austin, Bodell, Austin and Eric Lazenby enter Englewood Wal-Mart. Bodell stands by the Money Gram center closely watching P▮▮. At 6:01pm, a female approaches Bodell and starts to converse with him. At 6:06pm, P▮▮ takes off on foot from the customer service department and runs towards the electronics department. Moments after P▮▮ reaches the tire center, Bodell is close behind and approaches P▮▮. The surveillance shows Bodell and P▮▮ talking; P▮▮ seemed reluctant to go with Bodell. An employee enters into the tire center department from the bay area; P▮▮ informed the employee that he needs assistance. Bodell walked away. At 6:08pm, all three suspects, Austin, Lazenby and Bodell exit Wal-Mart and leave in the same SUV. According to the surveillance video, the SUV appears to be an older model Honda CRV.

On July 24, 2012, I met with P▮▮ P▮▮ identified all personally known persons with preprinted photos obtained from DAVID (driver's license photos). A photo lineup was presented; P▮▮ positively identified Austin Joiner as "Austin". P▮▮ also viewed the Wal-Mart surveillance video to identify all persons involved, which were consistent with the subjects he identified in the DAVID photos and the photo lineup.

I met with multiple witnesses who cooberated P▮▮ statement as to being held against his will, battered and taken to another place (Wal-Mart) to retrieve money in exchange for his release.

Several attempts have been made to locate Eric Devon Lazenby, however I have been told he is currently back in Ohio where he resides full time.

Therefore, Affiant prays that a warrant for the above mentioned person, **Eric Devon Lazenby Date of Birth May 6, 1990**, be issued; contrary to the statute in such case made and provided, and against the peace and dignity of the State of Florida, F.S.S. **787.01(2) and 787.02(2)**.

_____
Detective R. Lissow / 2307
CHARLOTTE COUNTY SHERIFF'S OFFICE

SWORN TO AND SUBSCRIBED BEFORE ME THIS 31ST DAY OF July 2012 A.D. BY GEORGE C. RICHARDS.

HONORABLE _____, JUDGE IN AND FOR CHARLOTTE COUNTY, FLORIDA.

OCA# 1207-002930

INV-RP.16.032309                                       PAGE 3 OF 3